UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-CV-00481-MEO-DCK

| | |
|---|---|
| **JUSTIN HUBBARD,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SOUTHWOOD REALTY COMPANY,**<br><br>**Defendant.** | **MEMORANDUM & ORDER** |

**THIS MATTER** is before the Court on Plaintiff Justin Hubbard's Motion to Provide Notice to the Collective Pursuant to 29 U.S.C. § 216(b) (Doc. No. 58). For the reasons set forth below, the Court **DENIES** the motion.

## I. BACKGROUND

Defendant Southwood Realty Company manages apartment communities in five states: North Carolina, South Carolina, Tennessee, Georgia, and Virginia. Plaintiff worked for Southwood as a maintenance supervisor in Knoxville, Tennessee, from about July 2022 to March 2024. Southwood paid Plaintiff by the hour and treated him as eligible for overtime.

Plaintiff claims that Southwood failed to pay overtime for work during lunch breaks. He says that maintenance workers often missed lunch or had it interrupted, but Southwood still took thirty minutes out of their pay. In May 2024, he filed this lawsuit on behalf of himself and similarly situated Southwood employees, claiming violations of the Fair Labor Standards Act ("FLSA"). (Doc. No. 1).

Plaintiff first asked the Court to send notice of this action to current and former

Southwood employees in February 2025. (Doc. No. 26). On March 25, 2026, the Court denied that request without prejudice. (Doc. No. 46). In the absence of controlling Fourth Circuit precedent, the Court applied the "clear, statutorily supported framework for assessing whether putative plaintiffs are similarly situated" set forth by the Fifth Circuit's decision in *Swales v. KLLM Transport Services, L.L.C.* (Doc. No. 46 at 2) (citing 985 F.3d 430, 433–34, 441 (5th Cir. 2021); *see also id.* at 7. The Court then allowed the parties additional discovery on whether other workers are similarly situated to Plaintiff. *Id.* at 9. It explained that Plaintiff could renew his motion at the close of discovery. *Id.*

Plaintiff now renews his motion. He asks to send notice to the following group:

> all current and former employees who have worked full-time for at least one week for Defendant as non-exempt, hourly Maintenance Technicians, Maintenance Workers, or Maintenance Supervisors and worked "on-site" of any of the properties managed by Defendant in the United States during the time period beginning three years prior to the filing of this Complaint until the resolution of this action.

(Doc. No. 58 at 1). This is a narrower group than the one proposed in Plaintiff's initial motion, which included not only maintenance workers but also "[l]easing [a]gents, [p]roperty [m]anagers, and [a]ssistant [p]roperty [m]anagers." (Doc. No. 26 at 1).

To support his renewed motion, Plaintiff relies on his own declaration and declarations from workers who have joined the case. (Doc. No. 58-1 at 14–18). He also relies on testimony from two Southwood managers: Jaimie Stowe, its human resources manager, and Russell Tindall, its director of operations and Rule 30(b)(6) corporate deponent. *Id.* at 8–9. In opposition to the motion, Southwood relies mainly on the depositions of Plaintiff and five workers who joined the case, along with those

six deponents' time records. (Doc. No. 59 at 13–17).

Plaintiff further asks the Court to approve his notice forms, pause the statute of limitations, order Southwood to share workers' contact information, and allow ninety days for workers to join his lawsuit. (Doc. No. 58-1 at 19–25).

## II. LEGAL STANDARD

The FLSA authorizes a plaintiff to sue on behalf of both himself and "other employees similarly situated." 29 U.S.C. § 216(b). An individual plaintiff may not sue on behalf of other workers without obtaining their written consent. *Id.* Workers need not be identical to be similarly situated. *Rosinbaum v. Flowers Foods, Inc.*, 238 F. Supp. 3d 738, 747 (E.D.N.C. 2017). And differences in how much each worker is owed do not, by themselves, defeat a collective action. *See O'Brien v. Smoothstack, Inc.*, No. 1:23-cv-491, 2024 WL 1356674, at *8 (E.D. Va. Mar. 28, 2024). The question is whether the same evidence can prove liability for the entire group.

## III. DISCUSSION

### A. The Key Questions

Plaintiff's theory is straightforward. He alleges that Southwood deducted a lunch break out of the wages it paid its maintenance workers regardless of whether those employees had actually taken a break. Three questions matter to whether the Court can decide that claim for a group:

1. Did the same policies and procedures apply to everyone in the group?
2. Did workers spend their lunch breaks mainly for Southwood's benefit? If not, they would not be entitled to compensation under the FLSA. The

Fourth Circuit asks whether, on balance, workers use mealtime for their own benefit or for their employer's. *Roy v. County of Lexington*, 141 F.3d 533, 545 (4th Cir. 1998).

3. Did Southwood know, or should it have known, about any unpaid work? The FLSA makes an employer pay only for work it "suffer[s] or permit[s]." 29 U.S.C. § 203(g); *see also Davis v. Food Lion*, 792 F.2d 1274 (4th Cir. 1986) (holding that an employer is liable for off-the-clock work only if it had actual or constructive knowledge of that work); 29 C.F.R. § 785.13.

The Court asks whether the same evidence can answer each of these questions for the whole group.

**B. Plaintiff Has Shown Some Company-Wide Policies**

Plaintiff has shown that some policies and procedures applied at every Southwood property. Southwood used one Employee Handbook for all properties and all hourly workers. (Doc. No. 58-2 at 27:20–28:7, 35:11–18). Until December 9, 2024, Southwood's payroll system took thirty minutes out of each workday for lunch. (Doc. Nos. 59 at 4; 59-2 at 1). A worker avoided the deduction by clocking out and back in for lunch. (Doc. No. 58-7 at 81:25–82:4). All hourly workers used the same ADP timekeeping system. (Doc. No. 58-2 at 35:25–36:5).

Plaintiff has also shown gaps in Southwood's policies and procedures. Southwood had no written policy or procedure that told workers how to report an interrupted lunch. (Doc. No. 58-7 at 61:4–7). It gave no specific training on the subject. *Id.* at 60:19–61:1; (Doc. No. 58-2 at 74:6–13). It did not define what kind of

interruption would earn pay. (Doc. No. 58-7 at 65:9–18). Ms. Stowe testified that workers must report their own time accurately, "[e]ven if their manager knows otherwise." (Doc. No. 58-2 at 46:18–24). She also said that maintenance supervisors had reported trouble taking lunch. *Id.* at 24:3–8.

But these policies do not answer the key questions. An automatic deduction that workers can override is not illegal on its face. Plaintiff's own authority says so. Such deductions are proper if "the employer accurately records actual hours worked, including any work performed during the lunch period." *Quickley v. Univ. of Md. Med. Sys. Corp.*, No. CIV. CCB-12-321, 2012 WL 4069757, at *5 (D. Md. Sept. 14, 2012). A rule that tells workers to report their own time is not illegal on its face either. Whether these policies and procedures led to unpaid work depends on two things: whether the worker spent his lunch working, and whether Southwood knew about it. These are fact-intensive, individualized inquiries addressed below.

This conclusion is supported by Fourth Circuit precedent in the "different, albeit somewhat overlapping" context of class actions. *Stafford v. Bojangles' Rests., Inc.*, 123 F.4th 671, 680 n.1 (4th Cir. 2024). "Allegations of generalized policies are not usually sufficient for the purposes of class certification. . . . Such vagueness may mask a multitude of disparities." *Id.* at 680. The Court finds *Stafford*'s reasoning persuasive in this context. *Cf. id.* (vacating Rule 23 class-action certification of off-the-clock wage classes that rested on a generalized policy).

### C. The Answers Vary from Worker to Worker

The depositions show that the answers to the second and third questions differ.

They differ from worker to worker and from property to property. They even differ for the same worker at different properties.

- **Justin Lloyd**, a maintenance supervisor, said interruptions came about once or twice every two weeks at Southwood's Watercourse property. At the Burlington properties, he sometimes skipped lunch because of his workload. However, he could not recall any interruptions at Southwood's Greensboro or Lynchburg. (Doc. No. 34-3 at 83:4–91:21, 94:5–96:22).
- **Raymond Bruce**, a maintenance technician, got calls during lunch several times a week at Southwood's Paris Mountain property. But at the Howell Road property, he had no interruptions and went home for most of his hour-long break. And at the Duncan property, his coworkers did not even have his phone number. (Doc. No. 34-4 at 104:5–105:25, 111:1–112:7, 133:4–139:16).
- **Wolfgang Hempfling**, a maintenance supervisor, said he would "wait until after" lunch to handle small requests, such as changing a light bulb. (Doc. No. 59-6 at 163:21–164:2). His time records often show "no lunch" entries with no deduction. *See* (Doc. No. 59-3 at 32–59).
- **David Martin**, another maintenance supervisor, said his lunches were "constantly interrupted." (Doc. No. 59-5 at 149:1–3). But he explained that this could mean a non-urgent text that did not make him stop eating. *Id.* at 148:25–150:24.

- **Plaintiff** said interruptions came more or less often depending on the workload. He also said he clocked in before handling an emergency on all but two occasions. (Doc. No. 34-2 at 143:18–25, 151:20–152:8).

The evidence on reporting time is also mixed. Several workers said Southwood fixed missed punches they reported. *See, e.g.*, (Doc. Nos. 34-3 at 63:10–2; 59-5 at 57:3–60:24). But on other occasions, Southwood did not fix missed punches. *See, e.g.*, (Doc. Nos. 34-4 at 143:13–20; 34:3 at 145:22–25; 59-4 at 56:23–57:23). Still other times, workers chose not to report short interruptions. *See, e.g.*, (Doc. No. 34-4 at 106:9–24). Mr. Tindall testified that property managers handle corrections in different ways. In his words, there is "a lot of variation in management style." (Doc. No. 59-1 at 102:4–9).

The Court does not decide whose account is right or whether any worker was, or was not, underpaid. To decide liability, the Court would have to look at each worker separately. It would have to examine each worker's property, supervisor, workload, and reporting habits. It would also have to examine what each interruption involved. That kind of worker-by-worker inquiry does not fit a collective action.

Plaintiff argues that these differences affect only damages. (Doc. No. 60 at 3–4). But many of them go further, affecting whether a violation even occurred. Consider two workers: one spends his lunch fixing a broken sewer line, and the other spends it at home eating a sandwich. The second worker may not have a claim at all.

The Fourth Circuit recently drew the same line. Differences in damages alone usually do not defeat group treatment. But a court must first confirm that the

challenged practices were uniform. *Cf. Overby v. Anheuser-Busch, LLC*, 178 F.4th 175, 178 (4th Cir. 2026) (vacating Rule 23 class certification of unpaid-work claims because the district court "failed to observe the myriad variations in employees' circumstances," while noting that the Rule 23 and FLSA collective inquiries overlap). Here, the record shows variation in the practices themselves, not just in damages.

### D. Plaintiff's Other Theories Do Not Fill the Gap

Plaintiff points to job descriptions that say maintenance workers have a "constant need" to communicate with staff and residents. Doc. No. 60 at 5 (citing (Doc. No. 58-7 at 50:11–52:9)). This language does not show that Southwood required workers to work through lunch. It simply describes the job. *See* (Doc. No. 58-7; Tindall Rule 30(b)(6) Dep. at 55:1–3) ("It's a big part of the job. When you clock in and start working, [communication is] nonstop until you clock back out.").

Plaintiff also points to Courtesy Connect, a system that routes after-hours calls to on-call workers. Mr. Tindall said only that a resident could "theoretically" choose the after-hours option during the day. *Id.* at 32:1–18. The workers who joined gave conflicting accounts of whether calls came through during the workday. *Contrast* (Doc. No. 59-6 at 122:10–14), *with* (Doc. No. 34-3 at 138:20–140:1).

Finally, Plaintiff says the timekeeping system often failed. But the failures happened at specific properties. Workers usually reported their time by hand or by voice, and Southwood paid them for that time. *See, e.g.*, (Doc. Nos. 34-3 at 23:24–25:19; 34-4 at 82:21–83:6, 126:2–128:4). Plaintiff does not develop this theory in his reply.

### E. A Smaller Group Would Not Solve the Problem

Southwood argues in the alternative for a smaller group. It would limit notice to maintenance supervisors, to the properties where deposed workers worked, and to the period ending December 9, 2024. (Doc. No. 59 at 23–24). The record supports some of these limits. Southwood stopped the automatic deduction on December 9, 2024. Plaintiff points to no evidence of unpaid lunch work after that date. The record also suggests that supervisors, not technicians, usually took emergency calls. *See, e.g.*, (Doc. Nos. 34-4 at 130:6–9; 59-5 at 102:1–103.25; 59-6 at 98:1–100:13, 105:1–25, 116:8–12).

The Court has considered whether a smaller group would be similarly situated and finds it would not. The differences that matter remain inside the smaller group. Plaintiff, Mr. Lloyd, Mr. Hempfling, and Mr. Martin all worked as maintenance supervisors before December 2024. Yet their accounts differ on how often interruptions happened, whether workers had to stop eating, and whether Southwood fixed their timesheets. Narrowing the group by job title, location, or date would not let the Court answer the key questions for everyone at once.

## IV. THE PARTIES' OTHER REQUESTS

In addition to the underlying request for notice, Plaintiff asks the Court to approve his notice forms, order Southwood to share contact information, and allow ninety days for workers to join this lawsuit. Because the Court denies notice, these requests are moot.

Plaintiff also asks the Court to toll the statute of limitations for workers who

have not joined this case. The Court declines to do so. Those workers are not parties here. Equitable tolling depends on each person's own diligence and circumstances. The Court cannot judge those matters for unknown workers in the abstract. *See Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002). Any worker who files his or her own action may ask that court for tolling. The Court therefore denies this request of the Plaintiff.

Southwood asks, in a footnote, that the Court dismiss opt-in plaintiffs Holt and Bethea and disregard their declarations. (Doc. No. 59 at 6 n.8). Southwood did not file a motion for this relief. Plaintiff says Southwood withdrew its deposition notices for both workers. (Doc. No. 60 at 12–13 n.36). The Court's ruling does not depend on those declarations. The Court therefore does not reach this request.

Finally, the workers who joined this case did so to pursue a collective action. No collective action will go forward. The Court therefore dismisses the opt-in Plaintiffs' claims without prejudice. Each opt-in Plaintiff may refile his or her claims in an individual action within thirty days of this Order.

The Court further finds that the opt-in Plaintiffs should not lose their claims because of this ruling. Each of them filed a written consent to join this case. Under the FLSA, that filing commenced each opt-in Plaintiff's action. 29 U.S.C. § 256(b). The opt-in Plaintiffs then relied on this case to pursue their claims. They did not cause a delay in resolving the question of notice. The Court's ruling, not any lack of diligence on their part, now requires them to proceed alone. As a result, the Court finds that enforcing the limitations period against them would be unfair. *See Chao*,

291 F.3d at 283. Therefore, for each opt-in Plaintiff over which the Court has jurisdiction in a future action, the Court equitably tolls the statute of limitations as to their claims. The tolling runs from the date that opt-in Plaintiff filed a consent in this case through the thirtieth day after this Order.

## V. CONCLUSION

Collective actions let workers pool their claims and share the cost of suing. That benefit depends on a real link among the claims. Section 216(b) supplies that link through its "similarly situated" requirement. When the key questions can be answered only one worker at a time, a collective action saves no time or money. It simply gathers many separate cases under one caption.

That is the situation here. Plaintiff has shown that some Southwood policies and procedures applied company-wide. But he has not shown that the same evidence can resolve liability for the proposed group. Whether lunch was work time, and whether Southwood knew of unpaid work, depends on each worker's circumstances. A smaller group would not change that result. Plaintiff has not met his burden under § 216(b).

This ruling does not decide whether Southwood underpaid anyone. Plaintiff may pursue his own claims, and other workers may pursue theirs.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Renewed Motion to Provide Notice Pursuant to 29 U.S.C. § 216(b) (Doc. No. 58) is **DENIED**;

2. Plaintiff's requests to approve the proposed notice and consent forms, to compel production of contact information, and to set a ninety-day notice period are **DENIED AS MOOT**. Plaintiff's request to equitably toll the statute of limitations for putative collective members who have not filed consents is **DENIED**;
3. The claims of all opt-in Plaintiffs are **DISMISSED WITHOUT PREJUDICE**, and each opt-in Plaintiff may refile his or her claims in an individual action;
4. For each opt-in Plaintiff over which the Court has jurisdiction in a future action, the statute of limitation is **EQUITABLY TOLLED** from the date that opt-in Plaintiff filed a consent to join this action through the thirtieth (30th) day after the date of this Order; and
5. This action shall proceed on Plaintiff's individual claims.

**SO ORDERED.**

Signed: November 13, 2026

Matthew E. Orso
United States District Judge